Index No. 09 Civ. 3017 (ENV)(CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERIC M. BERMAN, P.C., LACY KATZEN, LLP, DBA
ASSET HOLDINGS CORP., and ERIC M. BERMAN,

Plaintiffs,

- against -

THE CITY OF NEW YORK, THE NEW YORK CITY
COUNCIL, THE NEW YORK CITY DEPARTMENT OF
CONSUMER AFFAIRS, and JONATHAN MINTZ in his
capacity as the Commissioner of the New York City
Department of Consumer Affairs,

Defendants.

**DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 5-319*
*New York, N.Y. 10007*

*Of Counsel: Nicholas R. Ciappetta*
*Tel: (212) 788-0708*

GABRIEL TAUSSIG,
SHERYL NEUFELD,
NICHOLAS R. CIAPPETTA,
    Of Counsel.
October 21, 2009

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................... 2

POINT I

LOCAL LAW 15 DOES NOT VIOLATE THE
COMMERCE CLAUSE ................................................................... 2

1. The Applicable Law ........................................................... 3

2. Extraterritoriality ............................................................... 4

3. Pike Balancing Test ............................................................ 8

POINT II

LOCAL LAW 15 DOES NOT VIOLATE THE
CONTRACT CLAUSE ................................................................. 10

1. The Applicable Law ......................................................... 11

2. The Contract Clause does not apply in this case. .............. 12

3. Local Law 15 does not substantially impair
contractual rights. ............................................................ 13

4. There is a significant and legitimate public
purpose for Local Law 15 and the means to
achieve it are appropriate. ................................................ 15

POINT III

LOCAL LAW 15 IS NOT
UNCONSTITUTIONALLY VAGUE ............................................ 18

1. The Applicable Law ......................................................... 18

2. Plaintiffs lack standing to assert a facial
vagueness challenge. ........................................................ 19

**Page**

3.  The phrase "or other means" is not
    unconstitutionally vague....................................................20

4.  The phrase "regularly engages" is not
    unconstitutionally vague....................................................21

5.  The distinction between "activities that may
    only be performed by a licensed attorney" and
    "activities traditionally performed by debt
    collectors" is not unconstitutionally vague. ........................23

POINT IV

    LOCAL LAW 15 DOES NOT INTERFERE WITH
THE NEW YORK JUDICIARY'S AUTHORITY
TO REGULATE THE PRACTICE OF LAW ...........................................25

POINT V

    LOCAL LAW 15 DOES NOT VIOLATE NEW
YORK CITY CHARTER SECTION 2203(C)...........................................31

POINT VI

    LOCAL LAW 15 IS NOT INCONSISTENT WITH
ARTICLE 29-H OF THE NEW YORK STATE
GENERAL BUSINESS LAW....................................................33

1.  Article 29-H does not preempt the field of debt
    collection ....................................................34

2.  There is not a direct conflict between Article
    29-H and Local Law 15....................................................38

CONCLUSION ....................................................40

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

Allied Structural Steel Co., v. Spannaus,
    438 U.S. 234 (1978) ............................................................................... 15

Aponte v. Raychuk,
    140 Misc. 2d 864 (N.Y. Sup. Ct., N.Y. County, June 10, 1988),
    aff'd, 559 N.Y.S.2d 255, 256 (1st Dep't 1990) ................................. 27, 38

Arriaga v. Mukasey,
    521 F.3d 219 (2d Cir. 2008) ............................................................ 19, 20

Association of Int'l Auto. Mfrs., Inc.,
    84 F.3d 602 (2d Cir. 1996) ..................................................................... 19

Association of Surrogates and Supreme Court Reporters Within the City of New York v.
    State of New York,
    940 F.2d 766 (2d Cir. 1991) ................................................................... 16

Atlantic States Legal Found., Inc. v. Reynolds Metal Co.,
    1990 U.S. Dist. LEXIS 19077 (N.D.N.Y. Feb. 16, 1990) ..................... 18

Auburn Hous. Auth. v. Martinez,
    277 F.3d 138 (2d Cir. 2002) ................................................................... 24

Ba Mar v. County of Rockland,
    164 A.D.2d 605 (2nd Dep't 1991) ..................................................... 34, 35

Baptist v. Global Holding and Inv. Co., LLC,
    2007 U.S. Dist. LEXIS 49476 (E.D.N.Y. July 9, 2007) ........................ 29

CFCU Cmty. Credit Union v. Hayward,
    552 F.3d 253 (2d Cir. 2009) ............................................................ 14, 17

Centurion Capital Corp. v. Druce,
    828 N.Y.S.2d 851 (N.Y. Civ. Ct., N.Y. County, Dec. 21, 2006)........... 10, 22

City Line Auto Mall v. Mintz,
    42 A.D.3d 407 (1st Dept. 2007) ............................................................. 28

Consolidated Edison Co. of New York v. Town of Red Hook,
    468 N.Y.S.2d 596 (1983) ................................................................. 35, 37

Council for Owner Occupied Hous., Inc. v. Koch,
    462 N.Y.S.2d 762 (Sup. Ct., New York County, Apr. 25, 1983) ........ 38, 39

**Cases**                                                                                    **Pages**

DJL Rest. Corp. v. City of New York,
   96 N.Y.2d 91 (2001) ....................................................................................................33

Department of Revenue of Kentucky v. Davis,
   128 S. Ct. 1801 (2008) .................................................................................................3

Dougal v. County of Suffolk,
   102 A.D.2d 531 (2nd Dep't 1984) ........................................................................36, 37

Energy Reserves Group, Inc. v. Kansas Power & Light Co.,
   459 U.S. 400 (1982)...............................................................................................11, 14

Exxon Corp. v. Eagerton,
   462 U.S. 176 (1983)...............................................................................................11, 12

Farber v. NP Funding II L.P.,
   1997 U.S. Dist. LEXIS 21245 (E.D.N.Y. Dec. 9, 1997) ..........................................10

Federal Home Loan Mortgage Corp. v. New York State Div. of Housing and Cmty.
   Renewal,
   854 F. Supp. 151 (E.D.N.Y. 1994) ...........................................................................19

Five Borough Bicycle Club v. City of New York,
   483 F. Supp. 2d 351 (S.D.N.Y. 2007).......................................................................18

Forti v. New York State Ethics Comm'n,
   75 N.Y.2d 596 (1990) ...............................................................................................27

Freedom Holdings, Inc. v. Spitzer,
   257 F.3d 205 (2d Cir. 2004).....................................................................................4, 6

General Motors Corp. v. Romein,
   503 U.S. 181 (1978).................................................................................................13

Gervais v. Riddle & Associates, P.C.,
   479 F. Supp. 2d 270 (D. Conn 2007) .......................................................................29

Giannini v. Real,
   911 F.2d 354 (9th Cir. 1990)......................................................................................7

Goldman v. Cohen,
   445 F.3d 152 (2d. Cir. 2006).....................................................................................29

**Cases**                                                                                     **Pages**

Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,
    374 F.3d 56 (2d Cir. 2004)..............................................................22, 23

Grayned v. City of Rockford,
    408 U.S. 104 (1972).........................................................................18

Head v. New Mexico Bd. of Exam'rs in Optometry,
    374 U.S. 424 (1963).........................................................................15

Healy v. The Beer Inst.,
    491 U.S. 324 (1989)....................................................................4, 5, 6

Heintz v. Jenkins,
    514 U.S. 291 (1995).........................................................................29

Hester v. Graham, Bright & Smith, P.C.,
    289 Fed. Appx. 35 (5th Cir. 2008)......................................................22, 23

Instructional Sys., Inc. v. Computer Curriculum Corp.,
    35 F.3d 813 ..................................................................................6

Jacobs v. New York Foundling Hosp.,
    577 F.3d 93 (2d Cir. 2009)................................................................24

Jancyn Mfg. Corp. v. County of Suffolk,
    524 N.Y.S.2d 8 (1987)..............................................................34, 36, 37

Kelly v. Great Seneca Financial Corp.,
    443 F. Supp. 2d 954 (S.D. Oh. June 16, 2005) .........................................29

Kimber v. Federal Fin. Corp.,
    668 F. Supp. 1480 (M.D. Al. 1987) .....................................................30

Kuhne v. Cohen & Slamowitz, LLP,
    2008 U.S. Dist. LEXIS 17197 (S.D.N.Y. Mar. 5, 2008) ............................15

Kuhne v. Cohen & Slamowitz, LLP,
    U.S. App. LEXIS 19232 (2d Cir. Aug. 27, 2009).....................................15

Lansdown Entm't Corp. v. New York City Dep't of Consumer Affairs,
    74 N.Y.2d 761 (1989) ....................................................................39

Matter of Lazarus v. Corsi,
    268 A.D. 547 (3rd Dep't 1944)..........................................................22

**Cases**                                                                                        **Pages**

Matter of Padilla,
    67 N.Y.2d 440 (1986) ................................................................................................ 30

Matter of Wong,
    275 A.D.2d (1st Dep't 2000) ................................................................................. 30

Maine v. Taylor,
    477 U.S. 131 (1986) .................................................................................................. 3

Maynard v. Cartwright,
    486 U.S. 356 (1988) ................................................................................................ 19

Metropolitan Funeral Dirs. Ass'n, Inc. v. City of New York,
    182 N.Y.S.2d 526 (Sup. Ct., New York County, December 10, 1999) .............................. 34, 40

Midwest Title Loans, Inc. v. Ripley,
    2009 U.S. Dist. LEXIS 30261 (S.D. Ind. Apr. 3, 2009) ........................................... 5

Minnesota v. Clover Leaf Creamery Co.,
    449 U.S. 456 (1981) ................................................................................................ 16

Motor Vehicle Mfrs. Ass'n v. Abrams,
    720 F. Supp. 284 (S.D.N.Y. 1989) ......................................................................... 5

NYC C.L.A.S.H. v. City of New York,
    315 F. Supp. 2d 461 (S.D.N.Y. 2004) .................................................................... 18

National Elec. Mfrs.' Ass'n v. Sorrell,
    272 F.3d 104 (2d Cir. 2001) ........................................................................... 4, 5, 7

New York State Ass'n of Cemeteries, Inc. v. Fishman,
    2004 U.S. Dist. LEXIS 1332 (N.D.N.Y. Jan. 27, 2004) ................................... 15, 16

New York State Club Ass'n, Inc. v. City of New York,
    69 N.Y.2d 211 (1987) ............................................................................................. 39

New York Tel. Co. v. Environmental Control Bd. of the City of New York,
    1999 N.Y. Misc. LEXIS 565 (Sup. Ct., Queens County, Dec. 15, 1999) ............................ 31-32

Newman v. Checkrite California, Inc.,
    912 F. Supp. 1354 (E.D. Ca. December 19, 1995) ................................................. 29

| **Cases** | **Pages** |
|---|---|

Ogden v. Saunders,
    25 U.S. 213 (1827) ................................................................................... 13

Ohralik v. Ohio State Bar Ass'n,
    436 U.S. 447 (1978) ................................................................................. 15

Pasik v. State Bd. of Law Exam'rs,
    102 A.D.2d 395 (1st Dep't 1984) ............................................................ 30

People ex rel. Mosbacher v. Graves,
    254 App. Div. 438, 439 (3rd Dep't 1938) ............................................... 22

People v. Cook,
    34 N.Y.2d 100 (1974) ............................................................................. 39

People v. DeJesus,
    54 N.Y.2d 465 (1981) .............................................................. 33, 35, 36, 37

People v. Law Offices of Andrew F. Capoccia, LLC,
    289 A.D.2d 650 (3rd Dep't 2001) ....................................................... 26-27

Pike v. Bruce Church, Inc.,
    397 U.S. 137 (1970) .................................................................. 2, 3, 4, 8, 10

Raymond Motor Transp., Inc. v. Rice,
    434 U.S. 429 (1978) ................................................................................... 3

Richmond Boro Gun Club, Inc. v. City of New York,
    896 F. Supp. 276 (E.D.N.Y. 1995) ......................................................... 19

Robin v. Incorporated Vill. of Hempstead,
    30 N.Y.2d 347 (1972) ............................................................................. 37

Sanitation and Recycling Indus., Inc. v. City of New York,
    107 F.3d 985 (2d Cir. 1997) ..................................................... 11, 12, 14

Scariano v. Justices of the Supreme Court of the State of Indiana,
    38 F.3d 920 (7th Cir. 1994) ...................................................................... 7

Silver v. Woolf,
    538 F. Supp. 881 (D. Conn. 1982) .......................................................... 10

Stoneridge Apts., Co., v. Lindsay,
    303 F. Supp. 677 (S.D.N.Y. 1969) ......................................................... 12

**Cases**                                                                                    **Pages**

In re Sugarman,
   51 A.D.2d 170 (1st Dep't 1976) ................................................................. 30

Tetra Technologies, Inc. v. Harter,
   823 F. Supp. 1116 (S.D.N.Y. 1993) ............................................................ 8

Tinnerello & Sons, Inc. v. Stonington,
   141 F.3d 46 (2d Cir. 1998) ...................................................................... 11, 14

Town of Southold v. Town of East Hampton,
   477 F.3d 38 (2d Cir. 2007) ....................................................................... 3, 4, 8

Vatore v. Commissioner of Consumer Affairs of the City of New York,
   83 N.Y.2d 645 (1994) ............................................................................. 37, 38

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
   455 U.S. 489 (1982) ................................................................................ 19, 23

Waste Management Holdings, Inc. v. Gilmore,
   64 F. Supp. 2d 537 (E.D. Va. 1999) .......................................................... 12

While You Wait Photo Corp. v. Department of Consumer Affairs,
   87 A.D.2d 46 (1st Dep't 1982) ................................................................. 32

Wholesale Laundry Bd. of Trade, Inc. v. City of New York,
   17 A.D.2d 327 (1st Dep't 1962) ............................................................... 36

**Statutes**

15 U.S.C. §1692e ............................................................................................ 29

15 U.S.C. § 1692f ............................................................................................ 30

15 U.S.C. § 1692g ........................................................................................ 29, 38

15 U.S.C. § 1692k ............................................................................................ 38

15 U.S.C. § 1692n ......................................................................................... 7, 38

Ad. Code § 19-509(a)(ii) ................................................................................. 25

| **Statutes** | **Pages** |
|---|---|
| Ad. Code § 20-101 | 33 |
| Ad. Code § 20-104 | 17 |
| Ad. Code § 20-453 | 25 |
| Ad. Code §§ 20-493.1 | 38, 39, 40 |
| Ad. Code § 20-493.2 | 17, 29, 30, 39, 40 |
| Ad. Code §§ 20-101-116 | 17 |
| Ad. Code § 20-700(e)(i) | 27 |
| Fed. R. Civ. P. § 56 | 1, 40 |
| GBL § 601 | 35, 38, 39, 40 |
| GBL §§ 600-603 | 34, 37 |
| Local Civil Rule § 56.1 | 2 |
| Local Law § 15 | passim |
| Local Law § 67 | 38 |
| Municipal Home Rule Law § 10(1)(ii)(a)(12) | 34 |
| N.Y. CPLR § 3015(e) | 17 |
| New York Education Law § 7202 | 8 |
| New York State Vehicle and Traffic Law § 415 | 28 |
| RCNY §§ 1-13-1-16 | 17 |
| Real Proper Law § 223 | 35 |

**Other Authorities**

| | |
|---|---|
| The Consumer Credit Crisis in New York City and its Impact on the Working Poor (Oct. 2007) | 15 |
| FTC, Commentary on the Fair Debt Collection Practices Act, 53 FR 50097 (Dec. 13, 1998) | 24 |

**<u>Other Authorities</u>**                                                    **<u>Pages</u>**

National Consumer Law Center, Fair Debt Collection (6th ed. 2009)........................................................ 16

New York City Charter § 2203(c) .................................................................................... 31

New York State Constitution Article IX § 2(c)(i) ............................................................ 33

New York State Constitution Article IX § 2(c)(ii)(10) .................................................... 33

U.S. Constitution Article I § 8(3) ...................................................................................... 3

U.S. Constitution Article I § 10(1) .................................................................................. 11

## PRELIMINARY STATEMENT

Defendants, the City of New York, the New York City Council, the New York City Department of Consumer Affairs ("DCA"), and Jonathan Mintz, submit this memorandum of law in opposition to plaintiffs' motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, and in support of defendants' cross-motion for summary judgment. Defendants submit, for the reasons set forth herein, that the undisputed material facts before this Court entitle defendants to judgment in their favor as a matter of law.

Like a chameleon changing colors, or a snake shedding its skin, debt collectors adapt to changes in their regulatory environment. The most recent adaption is the development of a new species of debt collector – the so-called "passive" debt investor. As this population increased, DCA's efforts to regulate the debt collection industry and prevent abusive collection practices, were compromised. The "passive" debt buyers use the New York City Civil Courts as a weapon against society's most vulnerable population – the poor and ignorant. These debt buyers overwhelm the courts with tens of thousands of consumer debt collection actions a year, many of which involve stale or unverified claims, with the hope and expectation that defenseless consumers will default.

Prior to the enactment of Local Law 15 of 2009 ("LL 15"), the debt buyers' main defense to DCA regulation and oversight was that they were not acting as a "debt collection agency." Debt buyers maintain that since they do not directly contact alleged debtors, they are not debt collectors. However, this argument defies common sense. The principal purpose of the debt investors' business is obviously to collect on debts owed to them. Debt buyers further contend that they are no different than original creditors. However, unlike original creditors, debt buyers have no relationship to the original transaction or consumer. The fact that they are only concerned with getting a return on their investment makes them particularly dangerous. Debt

buyers also use their contractual relationships with third-party debt collectors as a shield from regulation, arguing that the third-party debt collector is an entity actually engaging in the collection activities.  While the third-party debt collector may do the dirty-work, they are performing under the direction of the debt buyer.  It is the debt buyer who acts like a puppeteer pulling the strings of its marionette.

LL 15 is an attempt to restore balance to the environment and protect consumers from this danger.  Armed with a more comprehensive licensing scheme, investigatory powers, and the authority to impose penalties ranging from fines to revocation, DCA is now more easily able to regulate the conduct of buyers of delinquent debt.  In a desperate attempt to remain unregulated, plaintiffs commenced the instant action and raise numerous constitutional challenges, none of which have any merit.

## STATEMENT OF FACTS

For a complete statement of facts, defendants respectfully refer the Court to its accompanying Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("56.1 Statement"), and the Declaration of Nicholas Ciappetta ("Ciappetta Dec."), and incorporate those documents by reference as if fully set forth herein.

## ARGUMENT

### POINT I

### LOCAL LAW 15 DOES NOT VIOLATE THE COMMERCE CLAUSE

Plaintiffs argue that Local Law 15 is unconstitutional because it (1) amounts to extraterritorial control of commerce and (2) fails the balancing test set forth by the Supreme Court in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970).  For the reasons set forth below, LL 15 does not violate the dormant Commerce Clause.

1.      **The Applicable Law**

Article I, Section 8, Clause 3 of the United States Constitution provides that Congress shall have power "[t]o regulate Commerce with foreign Nations, and among several States, and with the Indian Tribes…."  In addition to this express grant of power to Congress, the Commerce Clause contains a negative implication – commonly referred to as the dormant Commerce Clause – "which limits the power of local governments to enact laws affecting interstate commerce."  Town of Southold v. Town of East Hampton, 477 F.3d 38 (2d Cir. 2007). The chief concern of the dormant Commerce Clause is economic protectionism – "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Department of Revenue of Kentucky v. Davis, 128 S. Ct. 1801, 1808 (2008) (internal quotations and citations omitted); see also Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 440 (1978) (stating that the Commerce Clause prohibits States from "erecting barriers to the free flow of interstate commerce").  However, this restriction is not absolute, and "the States retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected."  Maine v. Taylor, 477 U.S. 131, 138 (1986).

A statute may violate the dormant Commerce Clause in three ways.  First, if a statute clearly discriminates against interstate commerce on its face or in effect, it is virtually invalid per se.  See Town of Southold, 477 F.3d at 47.  Such a law can withstand judicial scrutiny only if the purpose is unrelated to economic protectionism.[1]  See id.  Second, when a statute regulates evenhandedly to effectuate a legitimate public interest, and burdens interstate commerce only incidentally, the Pike balancing test is applied.  See Pike, 397 U.S. at 142.  Under Pike, the statute will be upheld unless the burden on interstate commerce "is clearly excessive in relation to

---

[1] Plaintiffs do not contend that Local Law 15 clearly discriminates against interstate commerce.

the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Id. A party challenging a law on either of these two grounds must first demonstrate that the statute has a "disparate impact" on interstate commerce. See Town of Southold, 477 F.3d at 47. In other words, the statute "must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d 104, 109 (2d Cir. 2001). Third, a statute is invalid per se "if it has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).[2]

## 2. Extraterritoriality

The extraterritorial aspect of dormant Commerce Clause jurisprudence emerged from a trilogy of Supreme Court price-regulation cases. See Freedom Holdings, 357 F.3d at 219. The last in this line of cases, Healy v. The Beer Inst., 491 U.S. 324 (1989), set forth the following three principles to guide an extraterritoriality analysis:

> First, the Commerce Clause precludes the application of a state statute that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State, and specifically, a State may not adopt legislation that has the practical effect of establishing a scale of prices for use in other states. Second, a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature....Third, the practical effect of the statute must be evaluated not only by considering the consequences of the statute

---

[2] The extraterritorial reach of a statute is sometimes analyzed as a type of "disparate impact" under the Pike balancing test rather than as an independent basis for invalidity. See id. at 216, n.11.

> itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation.

Id. at 336. (internal quotations and citations omitted).

LL 15 differs markedly from the laws at issue in the price regulation cases. First, LL 15 does not "establish a scale of prices" or affect interstate pricing decisions; the law has absolutely nothing to do with pricing. Second, the Connecticut price affirmation statute struck down in Healy smacked of economic protectionism. The law applied exclusively, and thus, discriminatorily, to interstate brewers and distributors of beer. See Healy, 491 U.S. at 341. In contrast, LL 15 regulates evenhandedly and applies to intrastate and interstate debt collectors alike. LL 15 requires both intrastate and interstate debt collectors to obtain a "debt collection agency license" if they seek to collect on debts in New York City. Therefore, LL 15, on its face, or in its effect, does not confer a benefit on local debt collectors. Thus, the chief concern of the dormant Commerce Clause – economic protectionism – is not implicated in the case at bar.

Third, and most importantly, LL 15 does not directly control commercial activity occurring wholly outside New York State.[3] The price regulation statutes made specific reference to the conduct of out-of-state actors. Unlike those regulations, LL 15 does not mention other states for any purpose. See National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d at 110. LL 15 does not impose requirements on debt collectors who attempt to collect on debts in other states. The debt collection activity regulated by LL 15 occurs wholly within New York City. An interstate

_____

[3] Plaintiffs' reliance on Midwest Title Loans, Inc. v. Ripley, 2009 U.S. Dist. LEXIS 30261 (S.D. Ind. Apr. 3, 2009), is misplaced. In that case, the challenged statute explicitly referred to and regulated contracts wholly executed outside of Indiana. As the Court stated, the statutory provision, "by design, directly regulates extraterritorial activity." Id. at 25. Likewise, Motor Vehicle Mfrs. Ass'n v. Abrams, 720 F. Supp. 284 (S.D.N.Y. 1989), is not on point. The Court upheld the "Lemon Law" as it regulated manufacturers, agents and dealers who do business in New York State. Id. at 289. As stated throughout this memorandum, debt buyers do business in New York City by virtue of the fact that they, among other things, commence litigation in the City's courts.

debt collection agency is not subject to LL 15 until it projects itself into New York City by collecting or attempting to collect on a debt owed by a New York City resident.

      In an attempt to exaggerate the interstate impact of LL 15, plaintiffs state that LL 15 projects licensing requirements and regulations into other states, "inasmuch as it requires foreign passive debt investors, among others, to obtain DCA licenses and comply with DCA regulations as a condition precedent to entering into contractual relationships that are utterly foreign to New York." See Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pls.' Memo") at 8. However, plaintiffs, by their own words, defeat this argument; plaintiffs acknowledge that a DCA debt collection agency license is not a prerequisite to consummating such contracts. See id. at 6. At most, plaintiffs have demonstrated that LL 15 is a municipal regulation that has minor, indirect ripple effects outside the City's boundaries. However, such effects are without constitutional significance where, as here, the challenged law does not directly control commerce and out-of-state entities' "remain free to conduct commerce on their own terms…." Freedom Holdings, 357 F.3d at 221; see also Instructional Sys., Inc. v. Computer Curriculum Corp., 35 F.3d 813, 825 ("[I]t is inevitable that a state's law…will have extraterritorial effects. The Supreme Court has never suggested that the dormant Commerce Clause requires Balkanization, with each state's law stopping at the border.").

      Finally, unlike in Healy, the risk of multiple, inconsistent regulatory regimes is not present herein. Plaintiffs state that if other municipalities adopt similar licensing requirements, "passive" debt investors will have to obtain licenses from every jurisdiction before engaging in business therein. However, this possibility, while perhaps unpleasant for debt investors, does not create the type of situation that concerned the Healy Court. That interstate debt collectors may be subject to multiple or even different licensing requirements, does not mean that they are necessarily inconsistent. Moreover, "[i]t is not enough to point to a risk of conflicting regulatory

regimes in multiple states; there must be an actual conflict between the challenged regulation and those in place in other states." National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d at 112.  Plaintiffs have not identified any regulations that actually conflict with LL 15.  Furthermore, the Fair Debt Collection Practices Act ("FDCPA") expressly authorizes states and municipalities to enact legislation such as LL 15 so long as it is not inconsistent with federal law.  See 56.1 Statement; 15 U.S.C. § 1692n.  "We have held that a federal statute's authorization of supplementary state regulation confers upon the state regulations, if not a shield, at least a sturdy buffer against a Commerce Clause challenge."  National Elec. Mfrs.' Ass'n v. Sorrell, 272 F.3d at 112.  (internal quotations and citations omitted).

Plaintiffs' argument that requiring out-of-state debt investors to obtain a license violates the Commerce Clause turns on the simple fact that such debt investors are not located within the boundaries of New York City.  However, common sense dictates that when an individual crosses state lines to conduct business, he or she must play by the rules of that jurisdiction.  A teacher certified in California, must obtain a New York State certificate to teach in the State's public schools.  Similarly, California may refuse reciprocity to an attorney licensed in another state and require that attorney to sit for the bar examination without violating the Commerce Clause.  See Giannini v. Real, 911 F.2d 354, 358-59 (9th Cir. 1990); see also Scariano v. Justices of the Supreme Court of the State of Indiana, 38 F.3d 920, 927-28 (7th Cir. 1994) (finding no extraterritorial effect because an out-of-state practitioner can gain admission by taking the Indiana Bar Exam).[4]

If Plaintiff DBA Asset Holdings Corp. ("DBA") wants to collect debts owed by New York City residents, it must simply apply for and obtain a debt collection agency license.

---

[4] Clearly any burden posed by DCA's licensing requirement pales in comparison to studying for and taking a bar exam.

Any extraterritorial effect is therefore mitigated.  Since none of the indicia of an impermissible extraterritorial regulation considered by the <u>Healy</u> Court are present herein, plaintiffs' cannot rely on this ground to invalidate LL 15.

**3.  Pike Balancing Test**

In the alternative, plaintiffs argue that LL 15 fails the <u>Pike</u> balancing test.  However, before the balancing test is applied, plaintiffs must make a threshold showing of disparate impact.

> We have recognized three circumstances in which an evenhanded regulation imposes an incidental burden on interstate commerce: (1) when the regulation has a disparate impact on any non-local commercial entity; (2) when the statute regulates commercial activity that takes place wholly beyond the state's borders; and (3) when the challenged statute imposes a regulatory requirement inconsistent with those of other states."

<u>Town of Southhold</u>, 477 F.3d at 50.[5]  Plaintiffs contend that LL 15 has a disparate impact on out-of-state passive debt investors, stating:  "[e]ffectively, the new law will prevent out-of-state passive debt investors such as DBA Holdings from entering the New York consumer debt markets on short notice, and will confer a benefit on local passive debt investors who conduct their business on an exclusively intrastate basis."[6]  <u>See</u> Pls.' Memo at 9.  Plaintiffs' argument is conclusory; they do not explain why they would not be able to enter the New York consumer debt markets on short notice.  Nor would such out-of-state "passive" debt investors be at a disadvantage vis-à-vis in-state "passive debt investors."  The licensing requirement applies with

---

[5] The second and third circumstances were addressed in the preceding discussion and, as detailed therein, plaintiffs have failed to make both of these required showings.

[6] In support of this argument, plaintiffs cite to <u>Tetra Technologies, Inc. v. Harter</u>, 823 F. Supp. 1116 (S.D.N.Y. 1993).  <u>Tetra</u> is not on point as the Court did not actually invalidate New York Education Law § 7202 as violating the Commerce Clause.  In any event, the Court's reasoning was flawed.  As in this case, there was no reason to believe that the out-of-state entity could not enter the market on short notice or that the licensing requirement would actually confer a benefit upon local competitors.  Moreover, as discussed below, states are permitted to impose their own licensing requirements.

equal force to both local and out-of-state debt investors. There is no reason why – nor do plaintiffs provide one – an in-state debt investor would obtain a debt collection agency license faster than an out-of-state debt investor.

Even if plaintiffs could demonstrate that LL 15 uniquely burdens interstate commerce, any burden is outweighed by the strength of the local benefits, and thus, the <u>Pike</u> balancing test is clearly satisfied.[7] LL 15 is a valid response to the changing nature of the debt collection industry that gave rise to new actors and new abusive practices. The most significant change, the selling, and re-selling of debts to debt buyers who have no connection to the original transaction, has led to a surge in consumer complaints made to DCA because "passive" debt buyers evaded oversight under the existing law. Without any such oversight, debt buyers were free to act with impunity. Debt buyers flooded the New York City Civil Courts with tens of thousands of collection actions – many of which provided inadequate notice to the debtor of the litigation – with expectation that the consumer would not appear in court and a default judgment would be entered. In fact, default judgments are granted in a staggering 80% of the cases, despite the fact that debt buyers often provide inadequate proof of their claims. By requiring debt buyers to be licensed, LL 15 gives DCA authority to investigate complaints made against them and, if warranted, impose penalties ranging from fines to license revocation. Thus, in addition to punishing wrongdoing by such debt buyers, the threat of fines and revocation will likely deter future violations.

Plaintiffs argue that LL 15 is unnecessary and that existing regulations are sufficient. <u>See</u> Pls.' Memo at 14. The success of this argument depends upon the false

---

[7] Plaintiffs acknowledge that New York City has a legitimate interest in regulating debt collection practices. <u>See</u> Pls.' Memo at 11.

assumption that buyers of delinquent debt such as Plaintiff DBA are truly passive.[8]  However, so-called "passive" debt buyers are not passive at all – they are actively involved at all steps of the debt collection process; they purchase the debt, hire a third-party debt collector to act on their behalf, and ultimately file collection lawsuits.  Debt buyers cannot hire a third-party to communicate with the consumer and then abdicate all responsibility for their agents' actions.  Thus, LL 15 puts the onus on buyers of delinquent debt to monitor their agent's conduct.

Since the important local interests at stake far outweigh any negligible burden on interstate commerce, and nondiscriminatory alternatives are not available, LL 15 is not unconstitutional under the <u>Pike</u> balancing test.[9]

**POINT II**

**LOCAL LAW 15 DOES NOT VIOLATE THE
CONTRACT CLAUSE**

Plaintiffs argue that LL 15 impairs the obligation of contracts between (1) original creditors and debt investors; (2) debt investors and debtors; and (3) debt investors and third-party debt collectors.  For the reasons that follow, plaintiffs' Contract Clause claim is without merit.

---

[8] Plaintiffs maintain that "passive" debt collectors are akin to original creditors.  <u>See</u> Pls.' Memo at 12, n.3. However, assignees of defaulted debt are treated as debt collectors under the FDCPA.  <u>See</u> Farber v. NP Funding II L.P., 1997 U.S. Dist. LEXIS 21245, *11 (E.D.N.Y. Dec. 9, 1997); <u>see also</u> Centurion Capital Corp. v. Druce, 828 N.Y.S.2d 851, 853 (N.Y. Civ. Ct., N.Y. County, Dec. 21, 2006) ("The courts have reasoned that because the purpose of the statute is to curb abusive debt collection practices and assignees of defaulted debts have no incentive to refrain from such practices, unlike creditors and assignees of current accounts, Congress intended that the statute cover them.").

[9] In a nearly identical case, the Court applied the <u>Pike</u> test and upheld a Connecticut statute requiring consumer collection agencies to obtain a license.  <u>See</u> Silver v. Woolf, 538 F. Supp. 881 (D. Conn. 1982). Plaintiff argued that since his company is an interstate debt collector, he might be subject to numerous state licensing requirements.  The Court rejected plaintiff's argument and, in response stated:  "[a] company which seeks to do business in all 50 states must bear the cost of doing business in those states. That cost includes complying with all applicable national and state laws."  <u>Id.</u> at 890.  The Court concluded that the considerable state interests justified any minimal burden on interstate commerce.  <u>See id.</u>

10

1.    **The Applicable Law**

Article I, Section 10, Clause 1 of the United States Constitution provides, in relevant part, that "[n]o State shall pass any…Law… impairing the Obligation of Contracts." "Though the Contract Clause is phrased in absolute terms, the Supreme Court has not interpreted the Clause absolutely to prohibit the impairment of either private or government contracts." Tinnerello & Sons, Inc. v. Stonington, 141 F.3d 46, 52 (2d Cir. 1998).  "The Court has long recognized that a statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment  If the law were otherwise, 'one would be able to obtain immunity from state regulation by making private contractual arrangements.'"  Exxon Corp. v. Eagerton, 462 U.S. 176, 190 (1983) (internal quotations and citations omitted).

Instead of imposing a complete bar to the interference with contractual rights, the Contract Clause merely places some limits upon State action.  See Sanitation and Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 993 (2d Cir. 1997).  The extent to which States may exercise their police powers to the detriment of private contracts is determined by applying the three-part test set forth in Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400 (1982).  The first inquiry is whether the regulation substantially impairs a contractual relationship.  Id. at 411.  If there is a substantial impairment, the State must have a "significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." Id. at 411-12.  The final inquiry is "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption."  Id. at 412. (internal quotations and citations omitted).  Put more simply, the final question is whether the

means chosen to accomplish the State's significant and legitimate public purpose are reasonable and appropriate.  See Sanitation, 107 F.3d at 993.

2.    **The Contract Clause does not apply in this case.**

This Court need not engage in the three-part analysis because the Contract Clause is not applicable here.  In Exxon, the Supreme Court considered a Contract Clause challenge to an Alabama statute that increased the severance tax on oil and gas producers, and prohibited such producers from passing the tax onto consumers.  However, because the statute imposed a "generally applicable rule of conduct" designed to protect customers from price increases, rather than a "rule limited in effect to contractual obligations or remedies", the Court did not utilize the three-part test and rejected the Contract Clause argument.  See Exxon, 462 U.S. at 192.  The Court found it significant that the law applied to all oil and gas producers, irrespective of whether they were parties to a contract with a pass-through provision.  Thus, any impairment of contractual rights was merely an incidental effect of the law.  See id.; see also  Stoneridge Apts., Co., v. Lindsay, 303 F. Supp. 677, 679 (S.D.N.Y. 1969) ("The clause is clearly intended to protect benefits and rights of a party under a contract and not to interfere with legislation which merely relates to the subject matter of the contract."); Waste Management Holdings, Inc. v. Gilmore, 64 F. Supp. 2d 537, 546 (E.D. Va. 1999) ("[T]he Supreme Court has invoked the Contract Clause only to strike down statutes that, rather than creating a generally applicable rule of conduct are limited in effect to contractual obligations and remedies.") (internal quotations and citations omitted).

Similarly, LL 15 imposes a licensing requirement that is applicable to all buyers of delinquent debt, regardless of whether they have a contractual relationship with another party.  LL 15 does not by its terms adjust contractual rights or the responsibilities of the parties thereto.  Any impairment of contractual obligations is simply an incidental byproduct of the law's legitimate

public purpose.  Thus, the court need not reach any further to dismiss plaintiffs' Contract Clause claim.

**3.      Local Law 15 does not substantially impair contractual rights.**

Even if the Court entertains plaintiffs' Contract Clause argument, plaintiffs cannot prevail because they have not and cannot establish that LL 15 substantially impairs contractual rights.  Whether a law operates as a substantial impairment of a contractual relationship has three components:  (1) "whether there is a contractual relationship;" (2) "whether a change in law impairs that contractual relationship;" and (3) "whether the impairment is substantial."  General Motors Corp. v. Romein, 503 U.S. 181, 186 (1978).

As stated above, plaintiffs maintain that LL 15 impairs the obligation of contracts between (1) original creditors and debt investors; (2) debt investors and debtors; and (3) debt investors and third-party debt collectors.  Assuming, arguendo, that contractual relationships presently exist, LL 15 does not impair those relationships.[10]  Plaintiffs seemingly confuse the impairment of a contract, with the impairment of a contractual obligation, the latter of which is what the Contracts Clause actually forbids.  See Ogden v. Saunders, 25 U.S. 213, 256 (1827) ("A contract is defined by all to be an agreement to do, or not to do, some particular act….Any law, then, which enlarges, abridges, or in any manner changes this intention, when it is discovered, necessarily impairs the contract itself…").  Plaintiffs do not identify any specific contractual obligation impaired by LL 15.  Plaintiffs' only argument is that LL 15 subjects them to DCA's licensing requirement as a condition precedent to enforcing their rights.  However, even if this constitutes an impairment of a contractual obligation, it is only temporary.  By the simple act of applying for and obtaining a debt collection agency license, the "impairment" is completely

---

[10] Plaintiffs do not refer to any specific contract that has been impaired.  Put another way, plaintiffs seem to be claiming that contract that have yet to be entered into will be impaired.

alleviated.  Plaintiffs do not cite any case in which a court has found a contractual impairment in the absence of a permanent adjustment of contractual rights.

Moreover, any impairment of contractual rights caused by LL 15 is not substantial. The degree of impairment is determined by the extent to which the challenged law disrupts reasonable contractual expectations.  See CFCU Cmty. Credit Union v. Hayward, 552 F.3d 253, 268 (2d Cir. 2009).  A substantial impairment of a contractual obligation occurs only if reasonable expectations are substantially disrupted.  See id.  "Impairment is greatest where the challenged government legislation was wholly unexpected.  When an industry is heavily regulated, regulation of contracts may be foreseeable…."  Sanitation, 107 F.3d at 993; see also Tinnerello, 141 F.3d at 53 ("If the plaintiff could anticipate, expect or foresee the governmental action at the time of contract execution, the plaintiff will ordinarily not be able to prevail.").  For this reason, the plaintiffs in Energy Reserves and Sanitation did not prevail.  In the former case, the Court reasoned that the parties were operating in a heavily regulated market (natural gas industry), subject to extensive federal and state regulations.  459 U.S. at 413-14.  In Sanitation, the Court stated that the refuse carting industry was subject to regulation by the City for years and, thus, the carters could have anticipated the regulation at issue.  107 F.3d at 994.

As described herein, the debt collection industry is subject to extensive regulations at all levels of government.  These regulations require certain disclosures and prohibit a wide-range of practices.  Punishment for violations includes injunctive relief, civil fines, monetary damages, and even criminal penalties.  For over twenty years, the City of New York has required debt collection agencies to obtain licenses from DCA.  In such a comprehensive regulatory environment, additional rules are not unforeseeable.  The amendments at issue in this case were

particularly foreseeable given the (1) exponential growth of the debt buyer industry[11], (2) considerable confusion amongst the courts about whether so-called "passive" debt investors were subject to the DCA licensing requirement,[12] (3) need to ensure the licensure of so-called "passive" debt investors, and (4) explosion in debt collection litigation, much of which involves debts not actually due and owing, debts for which the statute of limitations has expired, and insufficiently documented claims.   Thus, it cannot be said that LL 15 substantially impairs a contractual relationship.

4.      **There is a significant and legitimate public purpose for Local Law 15 and the means to achieve it are appropriate.**

        Plaintiffs also cannot satisfy the second and third prongs of the Energy Reserves test.[13]   It is beyond dispute that LL 15 serves an important and legitimate public purpose.   Stated broadly, LL 15 is a consumer protection statute.   The protection of consumers is recognized as a traditional and legitimate state interest.   See Head v. New Mexico Bd. of Exam'rs in Optometry, 374 U.S. 424, 445 (1963) (Brennan, J., concurring); see also Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 460 (1978); New York State Ass'n of Cemeteries, Inc. v. Fishman, 2004 U.S. Dist. LEXIS 1332, *25-30 (N.D.N.Y. Jan. 27, 2004).   More specifically, LL 15 adds another layer of protection for consumers against abusive practices by debt collectors.   As case law and history

---

[11] See Urban Justice Center, Debt Weight, The Consumer Credit Crisis in New York City and its Impact on the Working Poor (Oct. 2007).  Ciappetta Dec., Exhibit "G."

[12] A more complete discussion of this issue is set forth in Kuhne v. Cohen & Slamowitz, LLP, 2008 U.S. Dist. LEXIS 17197 (S.D.N.Y. Mar. 5, 2008) and Kuhne v. Cohen & Slamowitz, LLP, U.S. App. LEXIS 19232 (2d Cir. Aug. 27, 2009).

[13] As a preliminary matter since there is no impairment, let alone a substantial impairment, there is no hurdle to clear and this Court's inquiry should end without the need to address the second and third prongs of the test.  See Allied Structural Steel Co., v. Spannaus, 438 U.S. 234, 245 (1978) ("The severity of the impairment measures the height of the hurdle the state legislation must clear….").

indicates, the very nature of this industry engenders deceptive and illegal conduct.  For this reason, federal, state and local governments implemented detailed rules to regulate such conduct.[14]

Prior to the enactment of LL 15, so-called "passive" buyers of delinquent debt exploited a loophole in the definition of a "debt collection agency" to escape DCA's oversight.  In the absence of licensing and strict controls, debt buyers avoided responsibility for abusive practices by their agents.  Among other abusive practices, debt buyers bought and sought to collect on discharged, invalid and time-barred debts and filed scores of  groundless lawsuits to collect on debts without factual substantiation.  By extending the scope of the licensing requirement to cover the entity that actually owns the debt and directs the entire debt collection process, LL 15 undoubtedly provides a greater degree of consumer protection.

Moreover, whether LL 15 actually results in a greater degree of protection for consumers is immaterial to its constitutionality.  "It is irrelevant whether a statute will in fact promote the Legislature's intended purpose."  New York State Ass'n of Cemeteries, Inc., 2004 U.S. Dist. LEXIS at *21.  Plaintiffs' Contract Clause analysis [Pls.' Memo at 25-27] mistakenly applies a standard of review more appropriate where a fundamental constitutional right is implicated.  In contrast, Contracts Clause challenges – especially when there is a minimal impairment – are evaluated under a deferential standard of review akin to the rational-basis test.  See Association of Surrogates and Supreme Court Reporters Within the City of New York v. State of New York, 940 F.2d 766, 771 (2d Cir. 1991).  Under such review, courts do not question the necessity or reasonableness of legislation.  See id.; see also Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981).

_____

[14] See generally National Consumer Law Center, Fair Debt Collection (6th ed. 2009).

Since the stated purpose[15] of LL 15 is a legitimate state interest, the inquiry turns to whether the means used are rationally related to the achievement of that purpose. Here it was reasonable for the City Council to determine that the new regulations would contribute to greater consumer protection. Licensing provides DCA with considerable authority over licensees to ensure that businesses are operating in compliance with the law and not trampling over the rights of consumers. For example, licensees are subject to inspection by DCA, must maintain required books and records and must make them available to DCA for review. Licensed entities must also provide responses to consumer complaints within 20 days and must also submit to the jurisdiction of DCA's administrative tribunal. See Administrative Code ("Ad. Code") §§ 20-101-116; Title 6 RCNY 1-13-1-16. Inherent in the power to issue a license is the ability to revoke it. See Ad. Code § 20-104. Since a debt collection agency must be licensed unless specifically exempt to bring a civil action against a purported debtor (N.Y. CPLR § 3015(e)), the threat of revocation will likely deter deceptive or abusive practices by the "passive" debt buyer. This threat will force debt buyers to abide by the law, including maintaining and providing proof that a debt is valid as required by newly added Ad. Code § 20-493.2. Any decline in the quantity of lawsuits filed will also decrease the number of default judgments entered.[16] Thus, the amended licensing requirement and additional regulations are likely to achieve the City Council's objective of protecting consumers from unsavory debt collection behavior.

---

[15] Plaintiffs' contention that the true purpose of Local Law 15 is to pander to a narrow special interest group [Pls.' Memo at 26] is not worthy of serious consideration. First, an inquiry into the true purpose of a law is not appropriate under rational basis review. Second, the law clearly has a broad focus; an average of 300,000 consumer debt cases are filed in the New York City Civil Courts each year. Moreover, not only does the law apply to actual debtors, it also protects any consumer that may be erroneously targeted. Third, even if plaintiffs were correct, the law would not be unconstitutional. The Court in CFCU upheld a narrower statute that only protected a particular class of debtors. 552 F.3d at 268.

[16] A default judgment allows a debt collector to garnish the defendant's wages and freeze his/her bank accounts. See Ciappetta Dec. at ¶ 31. This will likely prevent the debtor from paying new bills or purchasing basic necessities, thereby triggering a new cycle of debt.

## POINT III

## LOCAL LAW 15 IS NOT UNCONSTITUTIONALLY VAGUE

Plaintiffs also argue that several clauses of the amended definition of a "debt collection agency" violate the due process clause of the United States Constitution because they are unconstitutionally vague.  One may challenge a statute on vagueness grounds either on its face or as applied.  Atlantic States Legal Found., Inc. v. Reynolds Metal Co., 1990 U.S. Dist. LEXIS 19077, *10 (N.D.N.Y. Feb. 16, 1990).  Plaintiffs do not specify whether they are raising a "facial" or "as applied" challenge to LL 15.  Regardless, their pre-enforcement challenge must fail as they misapprehend the governing law and LL 15 is not unconstitutionally vague.

1.    **The Applicable Law**

The void-for-vagueness doctrine is embodied in the Fourteenth Amendment's due process clause.  See NYC C.L.A.S.H. v. City of New York, 315 F. Supp. 2d 461, 484 (S.D.N.Y. 2004).  The Supreme Court in Grayned v. City of Rockford, 408 U.S. 104 (1972), described the two basic principles underlying the doctrine.  First, laws must give a "person of ordinary intelligence a reasonable opportunity to know what [conduct] is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."  Id. at 108.

The Constitution does not demand "mathematical certainty" from statutory language.  See id. at 110.  Nor is "perfect clarity" or "precise guidance" required.  See Five Borough Bicycle Club v. City of New York, 483 F. Supp. 2d 351, 380 (S.D.N.Y. 2007).  The degree of statutory precision depends upon the nature of the law and the consequences of enforcement.  See NYC C.L.A.S.H., 315 F. Supp. 2d at 484.

18

> [E]conomic regulation is subject to a less strict vagueness test
> because its subject matter is often more narrow, and because
> businesses, which face economic demands to plan behavior
> carefully, can be expected to consult relevant legislation in advance
> of action….The Court has also expressed greater tolerance of
> enactments with civil rather than criminal penalties because the
> consequences of imprecision and are qualitatively less severe….
> Finally, perhaps the most important factor affecting the clarity that
> the Constitution demands of a law is whether it threatens to inhibit
> the exercise of constitutionally protected rights.  If, for example, the
> law interferes with the right of free speech or of association, a more
> stringent vagueness test should apply.

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99 (1982).

Since LL 15 regulates business behavior and imposes only civil penalties, it is not subject to

exacting scrutiny.

**2.      Plaintiffs lack standing to assert a facial vagueness challenge.**

A facial vagueness challenge can only succeed if the law is "impermissibly vague

in all of its applications."  Id. at 495.  Under this standard, unless a statute is so vague as to be no

standard at all, it will be upheld.  See Association of Int'l Auto. Mfrs., Inc., 84 F.3d 602, 614 (2d

Cir. 1996); see also Federal Home Loan Mortgage Corp. v. New York State Div. of Housing and

Cmty. Renewal, 854 F. Supp. 151, 163 (E.D.N.Y. 1994).  However, the case law suggests that

when a First Amendment right is not implicated, a vagueness challenge will be evaluated on an

"as applied" basis.  See Arriaga v. Mukasey, 521 F.3d 219, 223 (2d Cir. 2008) (quoting Maynard

v. Cartwright, 486 U.S. 356, 361 (1988)); see also Association of Int'l Auto. Mfrs., Inc., 84 F.3d

at 613-14.  As stated above, LL 15 is an economic regulation that does not infringe upon any First

Amendment rights.

Moreover, a facial vagueness challenge may not be brought when the challenged

statute clearly includes at least some of a plaintiff's conduct.  See Richmond Boro Gun Club, Inc.

v. City of New York, 896 F. Supp. 276, 289 (E.D.N.Y. 1995) (citing Village of Hoffman, 455

U.S. at 495).  As described below, plaintiffs, by their own admissions, are clearly captured by the amended definition of a "debt collection agency."  Plaintiffs Eric M. Berman, P.C. and Lacy Katzen, LLP ("Lacy Katzen") regularly engage in "activities traditionally performed by debt collectors."  Plaintiff DBA is a buyer of delinquent debt who collects such debt through the services of third-party debt collectors.  Based on the foregoing, plaintiffs do not have standing to assert a facial challenge to LL 15.  In any event, since the statute is not vague as applied to the plaintiffs, such a facial challenge fails as a matter of law.  See Arriaga, 521 F.3d at 224.

**3.      The phrase "or other means" is not unconstitutionally vague.**

Plaintiffs contend that the added phrase "or other means"[17] is unconstitutionally vague with respect to passive debt investors such as plaintiff DBA.  See Pls.' Memo at 28. According to plaintiffs, this phrase leaves "passive" debt investors "in the dark" as to whether the act of entering into a contract with a debt collector subjects them to the licensing requirement.  Id. Plaintiffs' argument is disingenuous, at best, as they are attempting to have their cake and eat it too.  It is undisputed that DBA contracts with debt collectors and law firms to recover debts due and owing to DBA.  See Declaration of Eric M. Berman ("Berman Dec.") at ¶ 3.  Throughout their motion papers, plaintiffs state that LL 15 violates the commerce clause and contract clause because it requires passive debt investors who enter into contracts with third-party debt collectors to obtain a debt collection agency license.  See e.g. id. at ¶¶ 4-5; Pls.' Memo at 6, 8, 23. However, when convenient for plaintiffs' vagueness argument, they state that the law leaves them in the dark on this matter.

---

[17] The complete provision reads as follows:  "Debt collection agency shall mean a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another and shall also include a buyer of delinquent who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means to collect or attempt to collect such debt."  (emphasis added).

In any event, it cannot seriously be argued that LL 15 is unclear, let alone impermissibly vague, on this subject.  LL 15 explicitly states that the term "debt collection agency" includes a buyer of delinquent debt who collects such debt "through the services of another."  As the Berman Declaration makes clear, DBA collects their debts "through the services" of debt collectors and law firms.  See Berman Dec. ¶ 3.  Moreover, the legislative history of LL 15 repeatedly explains that the primary purpose of the legislation is to address the argument raised by debt buyers "that once they contract collection of the debt to another party they are engaged in "passive" collection and as such are not required to be licensed as a debt collection agencies by DCA."  Ciappetta Dec. ¶ 30.

4.    **The phrase "regularly engages" is not unconstitutionally vague.**

Plaintiffs next maintain that the phrase "regularly engages"[18] provides no guidance to attorneys.  Contrary to plaintiffs' assertions, it appears that they do in fact understand the meaning of "regularly engages."  Lacy Katzen acknowledges that it "*regularly* seeks to recover amounts due and owing on consumer debt portfolios held by passive debt investors, *including consumer debts owed by New York City debtors*…."  (emphasis added).  Declaration of Mark H. Stein ¶ 2.  Thus, there is no doubt that Lacy Katzen regularly engages in debt collection activity and that LL 15 requires the firm to obtain a DCA license to do so.  Apparently out of the realization that LL 15 left no gray area, both Lacy Katzen and plaintiff Eric Berman applied for – and received – a debt collection agency license.  See Ciappetta Dec., Exhibits "L"-"O."

---

[18] The term "debt collection agency" does not include "any attorney-at-law or law firm collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a licensed attorney, but not any attorney-at-law or law firm or part thereof who regularly engages in activities traditionally performed by debt collectors, including, but not limited to, contacting a debtor through the mail or via telephone with the purpose of collecting a debt or other activities as determined by rule of the commissioner…."  (emphasis added).  The underlined portions are the phrases challenged as vague by plaintiffs.

A recent challenge to nearly identical language in the FDCPA was rejected in Hester v. Graham, Bright & Smith, P.C., 289 Fed. Appx. 35 (5th Cir. 2008).[19]  In that case, defendants similarly asserted that the FDCPA's definition of "debt collector", in particular the phrase "regularly collects", was void for vagueness.  Applying the lower standard of review applicable to economic regulations, the Court held that the definition provided sufficient information for a person of ordinary intelligence to determine whether they will be considered debt collectors.

> The term 'regularly' is generally understood to mean 'at fixed and certain intervals, regular in point of time,' or 'in accordance with some consistent to periodical rule or practice.'  Thus, any person engaging in frequent debt collection activities should be aware that he may be considered a debt collector….Furthermore, courts do not seem to have varied significantly in determining what parties are 'regular' debt collectors, so there has not been arbitrary or discriminatory enforcement of the statute.

Id. at 43.  The Court further noted that defendants did not cite any case where the definition was held to be unconstitutionally vague.  Thus, it was evident to the Court that the term was clear and could be successfully applied.  Id. at 44.  Moreover, the Second Circuit in Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56 (2d Cir. 2004), developed a list of five non-exclusive factors[20] to determine whether a lawyer or law firm "regularly" engages in debt

---

[19] While not binding, a federal statute and decisions interpreting that statute, are "highly persuasive and uniformity in interpretation is desirable."  Matter of Lazarus v. Corsi, 268 A.D. 547, 554 (3rd Dep't 1944); see People ex rel. Mosbacher v. Graves, 254 App. Div. 438, 439 (3rd Dep't 1938) ("While, of course, federal decisions are not binding, they are highly persuasive, especially where the statutes are identical, the decisions uniform and the reasoning logical."); see also Centurion, 828 N.Y.S.2d at 8533 (stating that because the purpose of the New York City debt collection statute and the FDCPA are the same, and "the New York City statute was patterned on the FDCPA, this court will also look to interpretations of the federal act for guidance.").

[20] The factors include (1) "the absolute number of the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the

collection activity.[21]   There is no reason why such factors could not be used by decision makers or the New York State courts to interpret and apply the meaning of the phrase "regularly engages" contained in LL 15.   These factors eliminate the danger of standardless enforcement cited by plaintiffs as another reason why LL 15 is unconstitutionally vague.[22]   Nor is the fact that such factors will be applied on a case-by-case basis constitutionally problematic.[23]

5.   **The distinction between "activities that may only be performed by a licensed attorney" and "activities traditionally performed by debt collectors" is not unconstitutionally vague.**

Finally, plaintiffs argue that the distinction between "activities that may only be performed by a licensed attorney" and "activities traditionally performed by debt collectors"[24] is vague.   Once again, plaintiffs find ambiguity in terms that have a commonly understood meaning. This vagueness argument is also undercut by plaintiffs' own actions.   Lacy Katzen and Eric Berman apparently made the distinction and determined that their activities fall within the amended definition of a "debt collection agency."   Plaintiffs are reading these terms in isolation; when read in the context of the entire definition, there is no confusion.   For instance, an attorney is only subject to the licensing requirement if he or she "regularly engages in activities traditionally performed by debt collectors."   As the Court stated in Hester, an attorney engaging in

---

activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations."   Id. at 62-63.

[21] The Court in Hester relied on Goldstein, and the factors listed therein, to conclude that defendants were "regular debt collectors."   See Hester, 289 Fed. Appx. at 41-42.

[22] Where a pre-enforcement facial challenge is made, the concern for arbitrary enforcement is merely speculative.   The inquiry then simply is whether the law affords sufficient notice of what is prohibited. See Village of Hoffman, 455 U.S. at 503.   Based on the above analysis, the answer is an unequivocal "yes."

[23] The Goldstein Court explicitly stated that the question of whether one "regularly" engages in debt collection activity "*must* be assessed on a case-by-case basis…." (emphasis added).   374 F.3d at 62.

[24] These phrases are contained in the sentence located in footnote 18.

debt collection on a frequent basis should be on notice that he/she may be considered a debt collector.  LL 15 also lists the two most common types of debt collection activity (contacting a debtor by mail or telephone for the purpose of collecting a debt).[25]  The fact that the statute provides examples weakens plaintiffs' contention that the words in the provision are unconstitutionally vague.  These examples are more than sufficient to advise an attorney that he/she is engaging in debt collection activity.

Lastly, plaintiffs contend that there is no guidance as to what activities may only be performed by a licensed attorney.  Their argument simply ignores common sense; most people of ordinary intelligence have a sense of what a lawyer or debt collector does, in the same way that they have a reasonable idea as to what any other profession does.  Plaintiffs also question whether the simple act of holding oneself out as an attorney in a conversation or letter constitutes an act that only a licensed attorney may perform, thereby providing an exemption from the entire statute.  See Pls.' Memo at 29.  Such a reading would essentially nullify the requirement that attorneys who regularly engage in debt collection must obtain a license.  This interpretation also ignores a cardinal principle of statutory interpretation; namely that no part of a statute should be construed to be meaningless.  See Jacobs v. New York Foundling Hosp., 577 F.3d 93, 99 (2d Cir. 2009); see also Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 145-46 (2d Cir. 2002).

Plaintiffs fail to acknowledge that economic regulations such as LL 15 are subjected to minimal judicial scrutiny.  Put simply, the amended definition of a "debt collection agency" is not so vague as to amount to no standard at all.  As is apparent from plaintiffs' own statements and decision to apply for debt collection agency licenses, their conduct is subject to the

---

[25] Commentary by the Federal Trade Commission similarly defines "traditional debt collection activity" as sending dunning letters and making collection calls to consumers.  See FTC, Commentary on the Fair Debt Collection Practices Act, 53 FR 50097 (Dec. 13, 1998).

requirements of LL 15. For this reason, a facial challenge to LL 15 cannot be raised. Regardless, such a challenge fails because the law is not vague as applied to the plaintiffs as demonstrated above, and, thus, as a matter of law, it cannot be vague in all its applications.

**POINT IV**

**LOCAL LAW 15 DOES NOT INTERFERE WITH THE NEW YORK JUDICIARY'S AUTHORITY TO REGULATE THE PRACTICE OF LAW**

Plaintiffs incorrectly contend that LL 15 violates state law in that it impermissibly grants DCA the power to license and regulate attorneys – authority which is exclusively vested with the New York State Judiciary through New York Judiciary Law Sections 53 and 90. See Pls.' Memo at 19. Plaintiffs' argument rests on a fundamental misunderstanding of the purpose of LL 15 and the flawed assumption that attorneys are immune from all regulation by virtue of their license to practice law.

By its terms, LL 15 regulates the conduct of debt collection agencies, defined as those who regularly collect or attempt to collect debts. Attorneys and law firms are specifically excluded from this definition, except to the extent they "regularly engage in activities traditionally performed by debt collectors….." In other words, attorneys and law firms are only brought within the ambit of LL 15 when they act as debt collectors. This is not a distinction that turns on the niceties of language. As Councilman Daniel Garodnick remarked during the February 25, 2009 hearing on this legislation, if an attorney wanted to sell fruits and vegetables in New York City he/she would need a vendor license from DCA; similarly if the lawyer wanted to drive a taxicab, a license is required from the New York City Taxi and Limousine Commission ("TLC"). See Ad. Code §§ 20- 453 and 19-505(a)(i).

During the February 25, 2009 hearing, Plaintiff Eric Berman countered that there is a difference between a lawyer who drives a taxi cab and a lawyer who seeks to collect debts; namely that a lawyer can collect debts. To make the link between debt collection activity and the practice of law, plaintiffs are assuming, without any explanation, that the collection of debts and the practice of law are inexorably intertwined such that debt collection activity constitutes the practice of law. In doing so, plaintiffs improperly define the practice of law as contacting adverse parties by telephone and mail. See Pls.' Memo at 19. While it is undoubtedly true that attorneys communicate with adverse parties by telephone and mail, clearly this is not what makes the practice of law unique. Nearly all professionals contact others by telephone and through the mail.[26] Under plaintiffs' definition, all such individuals are engaging in the practice of law. Since plaintiffs fail to demonstrate that there is an inherently legal component to traditional debt collection activities, requiring a license to perform such activities does not regulate the practice of law.

To the extent plaintiffs are arguing that the debt collection agency licensing scheme is unnecessary as applied to attorneys because attorneys are subject to disciplinary action by the courts, such an argument is unavailing. The disciplinary rules do not contain the type of specific required and prohibited consumer debt collection practices listed in LL 15. Moreover, the fact that attorneys are licensed professionals does not provide them immunity from all administrative regulations or criminal penalties for violations of the Penal Law. See, e.g., People v. Law Offices of Andrew F. Capoccia, LLC, 289 A.D.2d 650, 651 (3rd Dep't 2001). ("[I]t can hardly be argued that an attorney who misappropriates clients funds…could not simultaneously be guilty of a violation of the Code of Professional Responsibility, as well as the provision of the

---

[26] As merely one example, physicians routinely send bills to patients for services rendered and then follow up such outstanding bills with additional notices to pay.

Penal Law proscribing larcenous conduct."). Furthermore, plaintiffs' argument that only the Judiciary may regulate the practice of law has been soundly rejected. An attorney's right to practice law is "clearly subject to reasonable restrictions imposed by the legislative, judicial and executive branches of government." Forti v. New York State Ethics Comm'n, 75 N.Y.2d 596, 612 (1990); see also Capoccia, 289 A.D.2d at 651.

In a case substantially similar to the instant matter, the New York State Supreme Court ruled that the City of New York could take enforcement action against attorneys for deceptive or misleading advertisements. See Aponte v. Raychuk, 140 Misc. 2d 864 (N.Y. Sup. Ct., N.Y. County, June 10, 1988), aff'd, 559 N.Y.S.2d 255, 256 (1st Dep't 1990) ("find[ing] no inconsistency between the local law [the New York City Consumer Protection Law] and the legislative delegation of authority to this court to regulate the conduct of attorneys" and no "implied legislative intent to preempt this area of regulation."). DCA, pursuant to the locally adopted Consumer Protection Law ("CPL")[27], sought a temporary injunction against defendant Raychuk to enjoin him from placing deceptive newspaper advertisements for his legal services. In response, Raychuk argued that the CPL does not apply to attorneys because the New York State Judiciary Law "preempts and solely regulates the conduct of advertising by attorneys." Id. at 866. The Court acknowledged that the supervision of attorneys is a matter for the Appellate Division of the Supreme Court in each Department, and that rules regarding attorney advertising were promulgated by both Appellate Divisions within New York City. However, the Court noted that unlike the CPL, such rules do not authorize civil penalties and injunctions.

> [T]he City's Consumer Protection Law is designed to safeguard 'the vast multitude including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are

---

[27] The Consumer Protection Law is codified at Section 20-700 et. seq. of Title 20, Chapter 5, Subchapter 1 of the Ad. Code.

> governed by appearances and general impressions.'…Thus, although the State has a comprehensive scheme to regulate attorneys' conduct, it does not appear to preempt the City's attempt to protect its consumers. Rather than being inconsistent with the scheme, the City's law supplements it, providing additional protection to the consuming public.

Id. at 869. As a result, the Court concluded that attorneys could be subject to regulation under the CPL. Quite simply, the fact that lawyers are regulated by one governmental authority does not preclude regulation by another. See, e.g., City Line Auto Mall v. Mintz, 42 A.D.3d 407, 408-09 (1st Dept. 2007) (Even though New York State Vehicle and Traffic Law § 415 requires used-car dealers to be registered, DCA retains authority to license and regulate such dealers.).

While plaintiffs contend that attorneys are sufficiently regulated by the Judiciary Law, they have not identified any rules that specifically govern debt collection activity by attorneys. Moreover, there is no question that LL 15, by requiring certain disclosures and prohibiting particular collection practices, supplements the scheme regulating attorneys' conduct and provides significant additional protection to alleged debtors.

Even if LL 15 amounts to a double licensing requirement for attorneys, such a result is hardly unusual, let alone improper. Once again, taxi cab drivers provide a useful comparison group. While a person with a New York State Class D Driver's License can operate a passenger car on any road throughout New York State, he/she cannot drive a cab in New York City without first applying for and receiving a taxicab driver's license from TLC. This additional licensing requirement is born from the fact that transporting virtual strangers for a monetary amount presents unique public safety concerns for a municipality. Similarly, the City of New York made a rational determination that the debt collection industry is prone to abusive practices and that such practices can be most effectively monitored and alleviated by a licensing regime

that regulates as many debt collectors as possible, even if some individuals are already subject to a different set of regulations.

Once again, the federal courts' interpretation of the FDCPA is instructive as to whether LL 15 presents an actual constitutional violation.  The Supreme Court in Heintz v. Jenkins, 514 U.S. 291, 299 (1995), unequivocally stated that the FDCPA's definition of the term "debt collector" "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."[28]  Moreover, the argument that subjecting attorneys to the FDCPA interferes with the practice of law – a contention similar to that raised by plaintiffs herein – has been rejected.  "[T]here is nothing in the FDCPA that purports to regulate the practice of law, only the practice of debt collection."  Kelly v. Great Seneca Financial Corp., 443 F. Supp. 2d 954, 960 (S.D. Oh. June 16, 2005); see also Newman v. Checkrite California, Inc., 912 F. Supp. 1354, 1365 (E.D. Ca. December 19, 1995) (reasoning that the FDCPA and state laws regulating the conduct of attorneys can co-exist and apply simultaneously to attorneys who also function as debt collectors).  Finally, plaintiffs argue that Ad. Code § 20-493.2 forces attorneys to disclose their legal strategies by requiring attorneys to advise adverse parties that the statute of limitations to initiate legal action has expired.  See Pls.' Memo at 19.  However, threatening litigation on a stale debt has been held to be a violation of 15 U.S.C. §1692e, which prohibits false or misleading representations.  See Baptist v. Global Holding and Inv. Co., LLC, 2007 U.S. Dist. LEXIS 49476, *13-14 (E.D.N.Y. July 9, 2007); see also Gervais v. Riddle & Associates, P.C., 479 F. Supp. 2d 270, 273 (D. Conn 2007).  In addition, the actual filing of a

_____

[28] Relying in part on the holding in Heitz, the Court ruled in Goldman v. Cohen, 445 F.3d 152 (2d. Cir. 2006), that the filing of an action in the Civil Court of the City of New York constituted an "initial communication" under the FDCPA, thereby triggering certain disclosure requirements under 15 U.S.C. § 1692g.  The required disclosures include the amount of the debt and the name of the creditor to whom the debt is owed – the same disclosures that plaintiffs herein claim improperly regulate the practice of law. See Pls.' Memo at 19.

lawsuit on a time-barred debt violates 15 U.S.C. § 1692f, which prevents collecting or attempt to collect on a debt by unfair or unconscionable means. Kimber v. Federal Fin. Corp., 668 F. Supp. 1480, 1487-88 (M.D. Al. 1987). In light of these federal decisions, it is clear that Administrative Law § 20-493.2 does not meaningfully restrict the legal options available to attorneys acting as debt collectors.[29]

   Significantly, plaintiffs did not cite any case in which a court has invalidated a generally applicable statute simply because it may have an incidental effect on attorneys. The few cases cited by plaintiffs in support of their position are inapposite. In re Sugarman, 51 A.D.2d 170 (1st Dep't 1976), and Pasik v. State Bd. of Law Exam'rs, 102 A.D.2d 395 (1st Dep't 1984), concern the Judiciary's power to admit or exclude persons from the New York State Bar. LL 15 in no way impacts membership in the Bar. Matter of Padilla, 67 N.Y.2d 440 (1986) and Matter of Wong, 275 A.D.2d (1st Dep't 2000), address whether *the courts* can impose discipline against attorneys under unique circumstances. These cases have nothing to do with the issue plaintiffs have raised in this action, namely whether an administrative agency can discipline an attorney for misconduct when acting as a debt collector.

   As detailed above, the intended reach of LL 15 is limited to attorneys performing non-legal tasks associated with debt collection. Attorneys acting as debt collectors are lawyers in name only. The license to practice law does not automatically permit attorneys to engage in any vocation of their choosing or the waiver of licensing requirements that restrict access to a profession. Nor have plaintiffs demonstrated that debt collection activity has such a strong legal component to it that it is indistinguishable from the practice of law. In fact, if this was true, then a license to practice law would be required to collect debts, which is surely not the case.

---

[29] Local Law 15 – like its federal counterpart – does permit debt collection agencies to collect on a time-barred debt.

## POINT V

## LOCAL LAW 15 DOES NOT VIOLATE NEW YORK CITY CHARTER SECTION 2203(C)___

New York City Charter Section 2203(c) states, in pertinent part, that the DCA Commissioner "shall have cognizance and control of the granting, issuing, transferring, renewing, revoking, suspending and cancelling of all licenses and permits, *except* in the cases with respect to which and to the extent to which any of said powers are conferred on other persons or agency by laws…." (emphasis added).

Plaintiffs contend that LL 15 improperly authorizes the DCA Commissioner to appropriate attorney licensing powers from the New York State Judiciary. Plaintiffs' contention regarding New York City Charter Section 2203(c) suffers from the same dispositive deficiency as the argument exhaustively refuted in the immediately preceding paragraphs. LL 15 permits the DCA Commissioner to exercise licensing authority over debt collection agencies, not attorneys. An attorney falls within the definition of a "debt collection agency" only when he/she chooses to engage in debt collection activity rather than the practice of law. LL 15 does not violate Charter Section 2203(c) because licensing powers over *debt collectors* are not "conferred on others persons or agency by laws…." Within the City of New York, debt collectors are licensed exclusively by DCA. Thus, LL 15 does not allow the DCA Commissioner "to arrogate to himself powers that are conferred upon others." Pls.' Memo at 18.

The only two cases cited by plaintiffs are not on point. See Pls.' Memo at 18. The question before the Court in New York Tel. Co. v. Environmental Control Bd. of the City of New York, 1999 N.Y. Misc. LEXIS 565 (Sup. Ct., Queens County, Dec. 15, 1999), was whether DCA had the power to issue notices of violations ("NOVs") for improperly maintained payphones. The Court ruled that it did not. "The power to issue permits and licenses for public pay telephones

31

was granted solely to DOT, and thereafter to DOITT, by law, and thus, such powers were never granted to the DCA." Id. at *13. However, this case is irrelevant to the issue at hand because as stated in the above paragraph, no other agency is granted the power to license debt collection agencies. The issuance of a permit to act as a debt collection agency and enforcement against such businesses, unlike inspections of public pay telephones, is within DCA's jurisdiction.

In While You Wait Photo Corp. v. Department of Consumer Affairs, 87 A.D.2d 46 (1st Dep't 1982), the Court overturned a DCA determination imposing certain conditions upon the renewal of petitioner's business license. These conditions were in response to an uptick in violence in the vicinity of petitioner's business. The Court stated that while crime reduction is a worthwhile objective, "it is not one which is within the scope of its prescribed duties…." Id. at 51. Rather, it is the responsibility of the City Planning Commission to determine whether a particular business is located in the proper location. "Despite the fact that both the Department of Consumer Affairs and the City Planning Commission are responsible for promoting the public health, safety and general welfare, the former does so with respect to *business practices* and the latter in relation to the character or conditions of a neighborhood or area." Id. (emphasis added). DCA's licensing authority is limited to consumer protection and regulating businesses that engage in unfair and unlawful practices. Id. at 50. The Court's description of DCA's jurisdiction is consistent with the legislative intent expressed in Section 20-101 of Title 20, Chapter 1 of the Ad. Code. This section states, in relevant part, as follows:

> The council finds that for the protection and relief of the public from deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, for the protection of the health and safety of the people of New York city and for other purposes requisite to promoting the general welfare, licensing by the department of consumer affairs is a necessary and proper mode of regulation with respect to certain trades, businesses and industries.

32

Ad. Code § 20-101.

The key holding of While You Wait Photo Corp. is that DCA must act within the scope of its statutorily prescribed powers.  The conditions imposed on petitioner's license were rejected because they did not relate to consumer protection.  In contrast to the situation presented therein, the licensing and regulation of debt collectors clearly falls within DCA's authority.  The requirements and prohibitions contained in LL 15 squarely relate to DCA's consumer protection mandate.  LL 15 ensures that vulnerable consumers are protected from abusive collection practices.  At the same time, the comprehensive licensing scheme allows DCA to ensure that businesses engage in fair and lawful trade practices.

**POINT VI**

**LOCAL LAW 15 IS NOT INCONSISTENT WITH ARTICLE 29-H OF THE NEW YORK STATE GENERAL BUSINESS LAW**

In general, the power of local governments to enact laws is derived from the State Legislature.  See DJL Rest. Corp. v. City of New York, 96 N.Y.2d 91, 94 (2001); see also People v. DeJesus, 54 N.Y.2d 465, 468 (1981).  Article IX, § 2(c)(i) of the New York State Constitution provides local governments with the "power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government…."  In addition, the State Constitution permits local governments "to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to" ten enumerated subject matter areas, including the "government, protection, order, conduct, safety, health and well-being of persons or property therein…."  Art. IX, §2(c)(ii)(10). This latter clause amounts to a broad conveyance of the police powers.  "To implement article IX, the Legislature enacted the Municipal Home Rule Law."  DJL Rest., 96 N.Y.2d at 94.  The Municipal Home Rule Law gives local governments the power to adopt and amend local laws – to

33

the extent they are not inconsistent with the provisions of the constitution or any general law – for "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein.  This provision shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses…."  Municipal Home Rule Law § 10(1)(ii)(a)(12).

A local law enacted pursuant to the broad police powers granted by the State Constitution and the Municipal Home Rule Law may be invalidated as inconsistent with State law when the local law expressly conflicts with the State law or when the State has "clearly evinced a desire to preempt an entire field thereby precluding any further local regulation."  Metropolitan Funeral Dirs. Ass'n, Inc. v. City of New York, 702 N.Y.S.2d 526, 530 (Sup. Ct., New York County, December 10, 1999) (quoting Jancyn Mfg. Corp. v. County of Suffolk, 524 N.Y.S.2d 8, 10 (1987).   Plaintiffs argue that LL 15 "constitutes legislation that directly conflicts with Sections 601 and 602" of the New York State General Business Law ("GBL") and "New York State has evinced its intention to preempt the regulatory field."  Pls.' Memo at 20.  For all the reasons that follow, plaintiffs are incorrect.

## 1.    Article 29-H does not preempt the field of debt collection

"In order for the preemption doctrine to prohibit local legislation in a particular area there must be an intent on the part of the State to occupy the entire field."  Ba Mar v. County of Rockland, 164 A.D.2d 605, 612 (2nd Dep't 1991).  Such an intent may be express or implied. Id.   No section of Article 29-H, which consists of four subdivisions – GBL §§ 600-603 – expressly prohibits local governments from enacting statutes regulating debt collectors.  Plaintiffs do not dispute this fact.  Thus, for plaintiffs to be correct, the intent to occupy the entire field of debt collection procedures must be implied.  To divine the intent of the State Legislature, courts look to declarations of State policy, whether the State enacted a comprehensive and detailed

regulatory scheme, including whether controls are imposed at the local level, the nature of the subject matter being regulated and the need for State-wide uniformity in a particular area. <u>See</u> <u>Consolidated Edison Co. of New York v. Town of Red Hook</u>, 468 N.Y.S.2d 596, 599 (1983); <u>see</u> <u>also</u> <u>Ba Mar</u>, 164 A.D.2d at 612.

   Article 29-H does not include any legislative declarations or statements of legislative intent. Nor is the legislative history particularly instructive. The purpose of the legislation was simply described as eliminating specific debt collection practices. Thus, the kind of strong statements from the Legislature and Governor accompanying the law at issue in <u>Consolidated Edison</u> are lacking. The <u>Consolidated Edison</u> Court greatly relied upon statements which stressed the importance of streamlining the approval of steam electric generating facilities into one proceeding before a single State entity. <u>See</u> 468 N.Y.S.2d at 599. Similarly, the broad scope of the Alcoholic Beverage Control Law ("ABC Law") at issue in <u>People v. DeJesus</u>, 54 N.Y.2d 465 (1981), was clearly spelled out as follows: "to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages…." 54 N.Y.2d at 470. That statement left little doubt as to the intent of the Legislature to preempt the entire field.

   The State's laws regulating debt collection agencies are not so comprehensive and detailed as to dictate the conclusion that the field is off-limits to regulation by local governments. Article 29-H is not comparable to those state laws found by the courts to have a preemptive intent. In <u>Ba Mar</u>, Real Property Law § 223 was deemed comprehensive and detailed because it covered nearly all aspects of mobile home park life. <u>See</u> <u>Ba Mar</u>, 164 A.D.2d at 613. In contrast, Article 29-H only addresses a narrow range of issues associated with debt collection. Article 29-H contains only one substantive section, GBL § 601, which lists nine prohibited practices. The remaining three provisions contain only definitions, penalties and a severability clause. Significantly, no rules or regulations were promulgated in the New York Code, Rules and

Regulations pursuant to the provisions of Article 29-H.  Most importantly, Article 29-H does not contain a licensing requirement.  Interestingly, the legislative history of Article 29-H reveals that Assemblyman Eugene Levy, Chairman of the Joint Legislative Committee on Consumer Protection, previously introduced legislation on two occasions to license debt collection agencies. See Ciappetta Dec., Exhibit "K."  Thus, the fact that Article 29-H does not include a licensing requirement indicates that a more comprehensive scheme was envisioned and rejected.

The comprehensiveness of a state regulatory regime is also measured by the existence or absence of local controls.  As a general rule, when the state statute establishes extensive direct controls at the local level, courts conclude that State law indicates a purpose to occupy the entire field.  In Dougal v. County of Suffolk, 102 A.D.2d 531, 533 (2nd Dep't 1984), a case cited by plaintiffs, the Court noted that the GBL gives "localities detailed instructions concerning the procedures to be employed in implementing the ban on 'drug-related paraphernalia.'  In fact, the GBL explicitly directs the method of disposition of 'drug-related paraphernalia in Suffolk County...."  Likewise, the Court in DeJesus, supra, found that the ABC Law preempted regulation by local governments because "the State's statutory structure imposes its own direct controls at the local level by creating local alcoholic beverage control boards...." DeJesus, 54 N.Y.2d at 469; see also Wholesale Laundry Bd. of Trade, Inc. v. City of New York, 17 A.D.2d 327, 330 (1st Dep't 1962) (finding that the New York Minimum Wage Act preempted the New York City Minimum Wage Law because the State law established "an elaborate machinery" to determine adequate wages for any occupation in any locality).  In contrast, the Jancyn Court was influenced by the fact that the State law did not impose "direct controls at the local level, by, for example, creating local environmental boards...or issuing detailed instructions to localities..., either of which would indicate that the State regulatory scheme was to take precedence over and supplant any local regulatory scheme."  Jancyn, supra, 524 N.Y.S.2d at 12.

Article 29-H does not establish any State-wide boards or tribunals to implement the regulatory scheme. Nor does the law provide municipalities with detailed instructions on enforcement or any other matter concerning the regulation of debt collectors. The lack of any direct controls, strongly weighs against any preemptive intent on the part of the State Legislature.

Highly salient to this discussion is whether there is a need for State-wide uniformity. The ABC Law represented a determination by the State that the problems the law sought to rectify "would be more effectively met not at the local community level but by State action alone." DeJesus, 54 N.Y.2d at 470. Similarly, the Dougal Court found that the local ordinances at issue would "impede implementation of State policy because their different standards, definitions and penalties would lead to confused and inconsistent enforcement." 102 A.D.2d at 534. Likewise, the need for uniformity was an essential reason for the enactment of Article VIII of the Public Service Law because inconsistent and burdensome local regulations were causing undue delay and expense in the siting of steam electric generating plants. Consolidated Edison, 468 N.Y.S.2d at 599. Where such concerns are not present, courts are less likely to infer a preemptive intent. See Jancyn, 524 N.Y.S.2d at 12; see also Vatore v. Commissioner of Consumer Affairs of the City of New York, 83 N.Y.2d 645, 650 (1994).

The debt collection industry does not pose any special concerns requiring State-wide uniformity. Unlike in the cases described above, there is no danger of inconsistent regulations or inefficient use of resources. Nor are there any statements in the legislative history or GBL §§ 600-603 that express a desire for uniform control. Furthermore, debt collection is not the type of field that is squarely within the province of State control such as the regulation of the practice of medicine or the performance of abortions. See Robin v. Incorporated Vill. of Hempstead, 30 N.Y.2d 347, 350 (1972). In fact, New York City debt collectors have been regulated for years by federal, state and city laws.

Moreover, LL 15 furthers the State's policy interests in regulating debt collectors. See Vatore, 83 N.Y.2d at 650 (holding that Local Law 67 of 1990, prohibiting the placement of tobacco product vending machines in most public places advanced the State's goal of discouraging tobacco use by adolescents). Article 29-H of the GBL was passed to prohibit abusive collection practices by debt collectors. Violations of the law are redressed by criminal penalties and/or injunctive relief. The City of New York's licensing requirement provides another enforcement mechanism; debt collection agencies face the revocation of their license for violations of the Ad. Code. LL 15 imposes additional prohibitions/requirements on licensees and enhanced penalties for violations. By addressing areas not covered by Article 29-H or even the FDCPA, LL 15 complements the State's scheme and deters debt collectors from engaging in deceptive or harassing behavior.[30]

## 2.      There is not a direct conflict between Article 29-H and Local Law 15

Since a thorough examination of the factors typically relied upon by the courts does not indicate any preemptive desire by the State Legislature, plaintiffs' claim that LL 15 is inconsistent with Article 29-H cannot succeed unless there is a direct conflict between the two statutes. "The mere fact that a local law may touch upon some of the same matters treated by the State law does not render the local law invalid automatically." Council for Owner Occupied Hous., Inc. v. Koch, 462 N.Y.S.2d 762, 764 (Sup. Ct., New York County, Apr. 25, 1983).

Plaintiffs argue that a conflict exists because LL 15 prohibits what State law would allow. See Pls.' Memo at 20. More specifically, plaintiffs contend that Ad. Code §§ 20-493.1

---

[30] Plaintiffs preemption argument is incompatible with the fact that the FDCPA explicitly authorizes the regulation of debt collection practices by municipalities. See 15 U.S.C. § 1692n. Moreover, the scope of Article 29-H appears quite narrow when viewed in light of the FDCPA. For one thing, Article 29-H, unlike its federal counterpart, contains no required disclosures regarding the validation of a debt. See 15 U.S.C. § 1692g. Second, the number of prohibited practices under the FDCPA is far more extensive than those listed in GBL § 601. Finally, the FDCPA authorizes a private right of action for damages against a debt collector who fails to comply with the law. See 15 U.S.C. § 1692k.

and 20-493.2 conflict with GBL § 601 because the former prohibits/requires what the latter does not. Plaintiffs' definition of conflict is much too broad and "[i]f this were the rule, the power of local governments to regulate would be illusory." New York State Club Ass'n, Inc. v. City of New York, 69 N.Y.2d 211, 221 (1987) (quoting People v. Cook, 34 N.Y.2d 100, 109 (1974)). Plaintiffs' understanding of the law applies only when the State has preempted the field or when the State "specifically permits the conduct prohibited at the local level." Id.

Lansdown Entm't Corp. v. New York City Dep't of Consumer Affairs, 74 N.Y.2d 761 (1989), provides an example of an impermissible direct conflict. The ABC Law prohibits the sale of alcohol after 4:00 a.m., but allows patrons to consume an alcoholic beverage purchased before that time until 4:30 a.m. The New York City Cabaret Law requires licensed cabarets to close at 4:00 a.m. Thus, the State law specifically permits conduct (remaining on the premises after 4:00 a.m. and consuming alcohol until 4:30 a.m.) that the Cabaret Law prohibits. This "head-on collision" between the City ordinance and State law requires that the former give way to the latter. Id. at 762-64.

This type of conflict is not present in the case at bar. While GBL § 601 does not require the disclosures listed in Ad. Code § 20-493.1, or prohibit the collection practices set forth in Ad. Code § 20-493.2,

> silence on this issue should not be interpreted as an expression of intent by the Legislature. To interpret a statute in that manner would vitiate the concept of home rule; anytime a State is silent the likelihood exists that a local law will regulate the activity and prohibit something permitted elsewhere in the State....Thus the fact that both the State and a municipality seek to regulate an activity does not of itself create an inconsistency; in this context "inconsistent" is not the equivalent of "different" and it is only those local laws which would contradict or be incompatible with the general laws of the State which must be struck down.

Council for Owner Occupied Hous., Inc., 462 N.Y.S.2d at 765.

LL 15 does not prohibit anything specifically permitted by GBL § 601. As is evident from the decision in Council for Owner Occupied Hous., Inc., the State Legislature's silence does not amount to specific permission to engage in the debt collection activity captured by Ad. Code §§ 20-493.1 and 20-493.2. Local Law 15 regulates debt collection agencies differently than GBL § 601. Such a difference does not create an inconsistency. Rather, the reason for such a difference lies in the fact that a not insignificant percentage of the City's population finds themselves in severe debt and therefore vulnerable to abusive collection practices. Moreover, litigation regarding these consumer debt claims has exploded and overwhelmed the New York City Civil Courts. The City's decision to provide greater protection to a powerless segment of society is not inconsistent with State law. See Metropolitan, 702 N.Y.S.2d at 532.

## CONCLUSION

For the reasons stated above, the Defendants are entitled to summary judgment, pursuant to Fed. R. Civ. P. 56, dismissing the Complaint in its entirety.

Dated:          New York, New York
                October 21, 2009

                          Respectfully submitted,

                          MICHAEL A. CARDOZO
                          Corporation Counsel
                            of the City of New York
                          Attorney for Defendants
                          100 Church Street, Room 5-319
                          New York, New York 10007
                          (212) 788-0708

                  By:     Nicholas Ciappetta

                          Nicholas R. Ciappetta (NC 7577)
                          Assistant Corporation Counsel